## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DONALD GRAHAM,

                Plaintiff,

v.                                   Civ.  No. 04-1103 JH/LAM

CITY OF HOBBS, et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' Motion to Dismiss* [Doc. No. 17], *Plaintiff's Motion to Extend Page Limits on Response and Attachments to Defendants' Motion to Dismiss* [Doc. No. 23], *Plaintiff's Motion for Leave to File Supplemental Documents in Support of Plaintiff's Response to Defendants' Motion to Dismiss* [Doc. No. 37], and *Plaintiff's Motion to File Amended Complaint and Join Joan McMahon As a Defendant* [Doc. No. 38].  In their Motion to Dismiss, the Defendants ask the Court to dismiss the case, arguing that the Court lacks subject matter jurisdiction, that the Complaint fails to state a claim upon which relief may be granted, and the Defendants are entitled to qualified immunity.  Plaintiff, in turn, argues that the Court should convert the Motion to Dismiss to one for summary judgment.  The Court declines to convert the motion to dismiss and finds that it should be granted.

### FACTUAL BACKGROUND

Plaintiff Donald Graham ("Graham") alleges the following facts in his Complaint, and for the purposes of considering the Motion to Dismiss, the Court accepts them as true.

Graham holds the rank of Major with the police department of Defendant City of Hobbs ("the

City"), which he joined in 1989.  Eventually, Graham rose to the rank of Deputy Chief.  On December 19, 2003, Defendant City Manager Dan Dible ("Dible") appointed Graham to the office of Acting Police Chief effective January 1, 2004.  Consistent with the customs of the Police Department, Graham then scheduled a comprehensive police department employee meeting on January 9, 2004. During the meeting, Graham discussed various issues, including pay and benefits.  Graham does not allege in his complaint what specific statements he made; rather, he alleges that they were "issues of police and public concern," as well as "statements regarding members of the City of Hobbs Commission which he felt were both of police and public concern and the potential effect on the efficient operation of the Hobbs Police Department."  Complaint at ¶ 11.  The meeting was recorded.

After the meeting, Graham traveled to Quantico, Virginia, for training.  While Graham was away, his secretary informed him that the Mayor's office and Defendant Hector Ramirez ("Ramirez") had requested a transcript of the meeting.  Graham contacted Dible, who initially said "don't worry about it," but then a short time later removed him from the position of Acting Police Chief and restored him to his former position of Deputy Chief.  On January 22, 2004, Dible issued Graham a letter of removal and a notice of pre-suspension meeting, in which he notified Graham that he was contemplating placing Graham on leave without pay as a result of Graham's comments at the January 9, 2004 meeting.

On January 28, 2004, Dible issued Graham a letter of reprimand.  Dible did not in fact remove and suspend Graham as he had previously indicated; instead, he cited three causes for disciplining Graham.  The following day, Graham responded to the reprimand by letter to Dible.  Other than returning Graham to his previous position of Deputy Chief and issuing the reprimand, Defendants took no other action against Graham at that time.

In June of 2004, Dible appointed Defendant Kenneth Bohn ("Bohn") to be the new Chief of Police.  In the meantime, Graham continued to serve as Deputy Chief without further incident until August 23, 2004, when Bohn informed him that he was being placed on administrative leave with pay pending the results of an administrative investigation.  The allegation against Graham was that he was untruthful in a police report—specifically, that he misnamed the individual who initiated the call to the police and that he misstated the time of initial contact by 25 minutes.  Graham alleges that the charges against him were unfounded because the facts misstated in his police report were immaterial and irrelevant.  Graham remained on administrative leave with pay for approximately three weeks, at which point he returned to his official duties as Deputy Chief or Commander.[1]  Graham received a written reprimand and a directive to complete remedial training.

Graham alleges "upon information and belief" that all Defendants conspired to prevent him from being considered for the position of Chief of Police, as well as to discredit him and oust him from the Police Department, and that they took these actions in retaliation against him for his exercise of his First Amendment right to free speech at the January 9, 2004 meeting.  He also contends that Defendants have disclosed erroneous information about him to the news media, injuring his good name and reputation.

Graham's complaint asserts that Defendants have violated his constitutional right to free speech under the First Amendment, his Fourteenth Amendment right to procedural due process in regard to the procedure employed in his removal from the position of Acting Chief of Police, his Fourteenth Amendment right to substantive due process, and his Fourteenth Amendment right to be

---

[1] It appears that due to a reorganization of the Police Department, Graham's new title became "Commander."

free from taint to his good name and reputation. He also asserts claims for conspiracy and punitive damages.

## DISCUSSION

## I.   AUTHORITIES CONSIDERED ON A MOTION TO DISMISS

A threshold issue in this matter is whether or not the Court may consider various extrinsic matters attached to the motion to dismiss, as well as Graham's response to the motion, without converting the motion to one for summary judgment. In this instance, Defendants have attached to their motion six documents that Graham specifically refers to in his Complaint and which are central to his claims: a transcript[2] of the January 9, 2004 hearing that is at the center of this case (Complaint at ¶ 12), two separate letters from Dible to Graham dated January 22, 2004 (Complaint ¶ 14), Dible's January 22, 2004 memo to the Mayor and the Commission of the City (Complaint ¶ 15), a letter of reprimand from Dible to Graham dated January 28, 2004 (Complaint ¶ 17), and Graham's January 29, 2004 response to the letter of reprimand (Complaint ¶ 18).

As a general rule, in deciding a motion to dismiss under Rule 12(b)(6), a federal court may only consider facts alleged within the complaint. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). However, there are several exceptions to this rule. First, a district court may review "mere argument contained in a memorandum in opposition to dismiss" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (quotation omitted). Second, "the district court

---

[2] In his response, Graham alleges that there is a dispute over the proper transcription of the tape of the January 9, 2004 meeting. Accordingly, he attaches not one but two copies of what he asserts is the correct transcript. *See* Plaintiff's Ex. 2 and Ex. 13 at p. 24. However, despite a fairly detailed review of all three transcripts, the Court is unable to discern any difference between them. Further, Graham fails to explain how his copies of the 28-page transcript differ from Defendants' copy, and it is not the Court's responsibility to undertake a word-by-word comparison of the documents on Graham's behalf.

may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Under a third exception to the general rule, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

The Court concludes that the six documents enumerated above fall within the second exception. Accordingly, the Court will consider them in connection with the motion to dismiss without the need to convert the motion to one for summary judgment. However, the remaining documents offered by the parties do not meet any of the three exceptions outlined above. For example, the complaint does not specifically refer to the newspaper articles and or the press release offered by Defendants. While the complaint does allege that Defendants made improper disclosures to the media, Graham does not identify these specific documents in his complaint. Furthermore, the numerous affidavits, witness statements, and newspaper articles offered by Graham in support of his response brief constitute evidence that a court would more properly consider on a motion for summary judgment, and therefore the Court will not review them in connection with this Memorandum Opinion and Order.

In sum, the Court will not convert the motion to dismiss to a motion for summary judgment, and it will consider only the six documents identified above. *Plaintiff's Motion to Extend Page Limits on Response and Attachments to Defendants' Motion to Dismiss* [Doc. No. 23] will be granted to the extent that Graham requests leave to file a response brief that exceeds the 24 pages allowed under the Local Rules, and the Court has considered his entire response brief. However, the motion will be denied to the extent Graham seeks an extension on the number of pages of exhibits

he may file in support of his response because the Court cannot consider those exhibits on a motion to dismiss. *Plaintiff's Motion for Leave to File Supplemental Documents in Support of Plaintiff's Response to Defendants' Motion to Dismiss* [Doc. No. 37] will be denied for the same reason.

## II.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In his complaint, Graham asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1343, subsection (a)(3) of which provides for original jurisdiction "to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States ..."  However, Defendants argue that this Court lacks subject matter jurisdiction over Graham's claims, citing *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974) and *Davis v. Pak*, 856 F.2d 648 (4thCir. 1988) for the proposition that a federal district court has no jurisdiction over a federal claim that is frivolous and insubstantial.

In *Hagans*, the plaintiff also attempted to evoke federal jurisdiction under 28 U.S.C. § 1343(a)(3). *Id*. at 532, 94 S.Ct. at 1376.  Although the Supreme Court ultimately found the plaintiff's constitutional claim substantial and retained jurisdiction over the case, the Court noted:

> Over the years, this court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and insubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion'.

*Id*. at 536-37, 94 S.Ct. at 1378-79 (citations omitted).  "While emphasizing that this insubstantiality threshold is a difficult one to meet, the Supreme Court concluded that the substantiality doctrine 'remains the federal rule and needs no reexamination here.'" *Davis*, 856 F.2d at 651 (quoting *Hagans*, 415 U.S. at 538, 94 S.Ct. at 1379). Dismissal on the grounds of insubstantiality is

appropriate only where the plaintiff's claim is truly frivolous.  "Cases which are doubtful on the merits, even those which cannot survive a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim, still are substantial enough to support federal jurisdiction."  *Id.*

The Court concludes that Graham's claims are not so insubstantial as to deprive this Court of jurisdiction under *Hagans*.  While it is true that Graham's claims will not survive Defendants' motion to dismiss (*see* Part III, *infra*), those claims are not so utterly frivolous as to deprive the Court of jurisdiction.  Furthermore, in *Davis* the court found that the federal constitutional claims served as a mere pretext to obtain a federal forum for plaintiff's state law claims.  *Id.* at 651-52.  That is not the case here, as Graham asserts no state law claims in this case.

Finally, Defendants argue that the case should be dismissed for lack of subject matter jurisdiction because Graham failed to respond to their argument on this point and therefore he should be deemed to consent to dismissal.  However, subject matter jurisdiction is an issue of law which the Court has an independent obligation to review, and subject matter jurisdiction may not be waived by any party.  Graham's failure to respond to Defendants' argument is not determinative.  Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

## III.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Having determined that it has subject matter jurisdiction over this case, the Court now turns to the issue of whether Graham's complaint should be dismissed under Rule 12(b)(6).

### A.      Conspiracy

Defendants argue that Graham has failed to allege adequate facts to support his claim of conspiracy.  The Court agrees.

In *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998), the Tenth

Circuit Court of Appeals set forth the standard that a plaintiff must meet in order to survive a motion to dismiss a claim for conspiracy: "Allegations of conspiracy may, indeed, form the basis of a § 1983 claim.  However, a plaintiff must allege *specific facts showing an agreement and concerted action* amongst the defendants.  Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." (emphasis added) (internal citations and quotations omitted).

In this case, Graham has come forward with nothing more than conclusory allegations of a conspiracy among the Defendants.  In fact, other than in the caption, Graham does not even mention most of the Defendants in his complaint.  The complaint contains no specific factual allegations regarding the City, Mayor Monty Newman, former Mayor Robert Wallach, John Boyd, Mark Bawcum, Ray Betzen, Robert Ray Wallach, Gary Fonay, or Joe Calderon.  Ramirez is accused only of requesting a transcript of the January 9, 2004 meeting.  The only defendants who Graham alleges took any specific action against him are Dible and Bohn, who came to the Police Department almost six months after the January 9 meeting that he claims is the source of retaliation against him.  Graham does not allege that Bohn knew about the January 9 meeting or that he consulted with any other defendant before placing Graham on administrative leave.  In light of the fact that Graham has alleged no misconduct by most of these defendants, no meeting of the minds and no concerted action, it would be quite a leap indeed to infer that they were part of a conspiracy.  Graham has simply failed to carry his burden of alleging the facts necessary to support his claim of conspiracy.  Accordingly, this claim will be dismissed.

## B. <u>Procedural Due Process</u>

In order to allege a claim for violation of procedural due process rights, a plaintiff must allege facts to show: (1) the existence of a recognized liberty or property interest, and (2) failure to receive

the process that is due. *See Matthews v. Eldridge*, 424 U.S. 319, 332-35, 96 S.Ct. 893 (1976).  The Fourteenth Amendment does not create property or liberty interests. Rather, Graham's right, if any, must arise out of an independent source, such as state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701 (1972).

### 1.      Removal from position as Acting Chief of Police in January of 2004

Graham alleges that he had a property interest in continuing in the position of Acting Chief of Police until a permanent Chief was hired.  Although Graham admits that he has no property interest in the job of Chief of Police, he does assert that he has a property interest in "the difference in pay scale between what he was receiving as Interim Chief and what he received as Major (Deputy Chief), after his demotion until the new chief was appointed (approximately $5,000)."  Graham argues in his response brief that this property right was created by both the City of Hobbs Personnel Rules, as well as by unspecified verbal promises made to him by Dible.[3]  However, Graham's complaint contains no allegation of verbal promises by Dible—that is merely his counsel's argument in the brief, and the Court will not consider it here.

The United States Supreme Court has held that "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).  In general, the Court looks to state law to determine whether a property interest in employment exists. *Lighton v.*

---

[3] Graham also argues that the property right was also created by a memo from Dibble to the Hobbs Commission and in comments made by Dible to the press, and he refers to his Exhibits 11 and 12 in support of those arguments.  However, as explained above, the Court will not consider those documents on the motion to dismiss.

*University of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000).[4]  In this case, the applicable sources of

law would be both New Mexico common law and the City of Hobbs Personnel Rules and the Hobbs

Municipal Code, which defines an "acting appointment" as "a temporary assignment of an employee

to a different classification" for a period between one and six months. Hobbs Municipal Code § 21-1-

3, 21-5-5(c).  It also provides that individuals who are heads of departments, such as the Chief of

Police, serve at the pleasure of the city manager and have no rights of grievance or appeal.  *Id.* at §

21-7-17.  Further, under the Municipal Code, one's removal from a temporary assignment is not

grievable.  *Id.* at § 21-10-3(f).  In his Complaint, Graham admits that he was assigned to the police

chief job in an acting capacity, Complaint at ¶ 10, and that he had no property right in the office of

Chief of Police.  *Id.* at ¶ 23.  Graham does not dispute that the Hobbs Municipal Code contains the

foregoing provisions, nor does he take issue with Defendants' arguments regarding the ordinances'

import for his due process claims.

Considering all of these factors, the Court concludes that Graham had no legitimate

expectation of continuing in his temporary position as Acting Police Chief for any particular period

of time.  According to both the allegations of the Complaint and local ordinances, the appointment

was of limited duration and one in which Graham served at the pleasure of the City Manager.  There

is nothing in the complaint or in the Hobbs Municipal Code to indicate that Graham's stint as Acting

Police Chief was anything but an at-will position that could be terminated at any time for any reason.

Accordingly, the Court concludes that Graham did not have a property interest in the $5,000 salary

---

[4] However, the Tenth Circuit has also noted that "[a]n employee possesses a property
interest in public employment only if she has tenure, a contract for a fixed term, or if state law
allows dismissal only for 'cause' or its equivalent."  *Beus v. Uinta County Bd. of County
Comm'rs*, 143 Fed. Appx. 945, 950 (10th Cir. 2005) (unpublished) (citing *Bd. of Regents v. Roth*,
408 U.S. 564, 576-77, 92 S.Ct. 2701 (1972)).

that he would have received if he had remained the Acting Police Chief, and therefore his claim for procedural due process will be dismissed.

### 2.     Suspension with pay in August of 2004

The second event with regard to which Graham claims he suffered a violation of his right to procedural due process was his suspension with pay for three weeks beginning in August of 2004. As noted above, in order to establish a procedural due process claim, Plaintiff first must demonstrate that he possessed a property or liberty interest. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). However, as Defendants have correctly pointed out, the Tenth Circuit has observed that the suspension of a public employee with pay does not impinge upon a protectable property right: "Suspension with pay does not raise due process concerns." *Hicks v. City of Watonga, Oklahoma*, 942 F.2d 737, 746 n.4 (10th Cir. 1991) (citing *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 544-45, 105 S.Ct. 1487, 1494-95 (1985) (suggesting that suspension with pay may not raise due process concerns); *Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas*, 869 F.2d 555, 556 (10th Cir. 1989) (suspension of public employee with pay does not infringe any measurable property interest)). In short, no due process violation occurred due to Graham's suspension with pay. *See Sanchez v. Baca*, 1999 WL 373177 at *3 (10th Cir. June. 9, 1999). Accordingly, because no property or liberty interest is involved, the Court need not reach the question of whether he received the process that was due. Graham has failed to state a due process claim related to his paid suspension, and it will be dismissed.

### 3.     Demotion to position of Commander

In his response brief, Graham contends for the first time that the change in title from Major (Deputy Chief) to Commander constituted a demotion for which he was deprived of procedural due

process. The complaint contains only one vague reference to this issue.  In Paragraph 19, Graham alleges that after his paid three week suspension, he "returned to his official duties as Deputy Chief or now Commander, pursuant to the Chief's reorganization, and was advised by the Chief that no further action would be taken other than a formal written reprimand ..."  Thus, the Complaint gives the Defendants no notice that he is claiming that he was demoted; instead, the Complaint implies that under the reorganization, his position of Deputy Chief was essentially renamed "Commander." Graham does not allege in the Complaint that he suffered a loss of pay, benefits, or job duties as a result of the reorganization.  Furthermore, the Complaint makes clear that Graham is alleging that his removal from the position of Acting Chief and his subsequent suspension with pay were wrongful. However, the Complaint gives no inkling of his more recent assertion that the reorganization (with the resulting change in his title) was wrongful as well.  While Rule 8 requires only a short and plain statement of Graham's claim, Defendants are not required to guess at his claims.  Accordingly, to the extent that Graham is attempting to asserting a due process claim regarding his change in title, it will be dismissed.

> **C.**   <u>**Substantive Due Process**</u>

The Tenth Circuit Court of Appeals has observed that the due process clause is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662 (1986) (quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155 (1976)); *see also DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202, 109 S.Ct. 998 (1989) (stating that "the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation").  To make out a substantive due process claim, "a plaintiff must demonstrate a degree of outrageousness and

a magnitude of potential or actual harm that is truly conscience shocking.... The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct." *Livsey v. Salt Lake County*, 275 F.3d 952, 957-58 (10th Cir. 2001) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (internal quotations and citations omitted)). The "ultimate standard" is "whether the challenged government action 'shocks the conscience' of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183-84 (10th Cir. 2002) (citations and quotations omitted). In making that determination, the Court should consider "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Id*. at 1184. With these guiding principles in mind, the Court turns to the motion to dismiss Graham's claim for violation of his right to substantive due process.

### 1.        Deprivation of a Property Interest

Graham does not allege that he is a member of a suspect class; rather, he avers that Defendants improperly deprived him of a property interest in his job. "In order to present a claim of denial of substantive due process by a discharge [from public employment] for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Curtis v. Oklahoma Pub. Sch. Bd. of Education*, 147 F.3d 1200, 1215 (10th Cir. 1998) (internal quotation marks and citation omitted). Here, Graham essentially contends that he had a contract with the City that created a property interest entitling him to (1) keep the job of Acting Deputy Chief for an unspecified time, and (2) not be suspended with pay. Although he does not use these exact words, he essentially claims that Defendants' actions in this regard were arbitrary and

capricious and thus violated his substantive Fourteenth Amendment rights in that property.  However, for the same reasons outlined in the discussion of procedural due process, *supra*, the Court concludes that under the facts as alleged by Graham, he had no property interest in the temporary job of Acting Police Chief.[5]  Accordingly, this aspect of his substantive due process claim will be dismissed.

### 2.      Deprivation of the Right to Privacy

Graham also alleges that Defendants violated his privacy interests protected by the Fourteenth Amendment's due process clause—specifically, his right "to be free from taint in reputation, good name, honor, and integrity."  Complaint at ¶ 28(b).  Graham refers in passing to the "erroneous media releases by the City of Hobbs" relating to his removal from the position of Acting Police Chief which caused him emotional distress and damage to his reputation, *id.* at ¶ 21, but he does not allege what the media releases said, when they occurred, or how they were erroneous.  In addition, Graham alleges that "[w]ithout the willful, wrongful and malicious communications released by officials of the City of Hobbs, Plaintiff's impeccable 15 years [sic] service as a police officer with the City of Hobbs, and his unblemished record would not have been damaged."  *Id.* at ¶ 36.  Graham does not allege that Defendants published any false statements about him relating to his three week suspension.

_____

[5] The Court also observes that while the Tenth Circuit has not yet addressed the question of whether tenured public employment is a fundamental property interest entitled to substantive due process protection, *Clinger v. New Mexico Highlands University Board of Regents*, 215 F.3d 1162, 1167 (10th Cir. 2000), the great majority of courts of appeals that have addressed this issue have determined that it is not. *See, e.g., Nicholas v. Pennsylvania State University*, 227 F.3d 133, 142 (4th Cir. 2000); *Singleton v. Cecil*, 176 F.3d 419, 425-26 (8th Cir. 1999) (en banc); *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992); *see also Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994); *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 958 (7th Cir. 1988); *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989). *But see Newman v. Massachusetts*, 884 F.2d 19, 25 (1st Cir. 1989) ("school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation").

In *Flanagan v. Munger*, the Tenth Circuit examined whether a state actor had violated the privacy rights of an individual by disclosing information from a personnel file.  It held that in determining whether "information contained in personnel files is of such a highly personal or sensitive nature that it falls within the zone of confidentiality," a court "must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner."  890 F.2d 1557, 1570 (10th Cir. 1989). Analyzing only the first prong of this test, the Tenth Circuit observed that "[o]nly highly personal information is protected" and that "data in files which is not of a highly personal or sensitive nature may not fall within the zone of confidentiality." *Id.* (quotation omitted).  The court concluded in *Flanagan* that disclosing reprimands in a personnel file did not violate the plaintiffs' right to privacy.  *Id.*  In reaching its decision, the Tenth Circuit relied upon *Mangels v. Pena*, 789 F.2d 836 (10th Cir. 1986), an action brought under Section 1983 for violation of the constitutional right to privacy.  In *Mangels* the Court reasoned that,

> [t]he Due Process Clause directly protects fundamental aspects of personal privacy against intrusion by the State. One aspect of this substantive due process arises from the individual interest in avoiding disclosure of personal matters. Due process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state.
> ...
> Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the state's possession. The legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses.

*Mangels*, 789 F.2d at 839 (quotations and citations omitted).

Thus, in order to have a constitutionally protected privacy interest in information, an

15

individual must have a legitimate expectation that information will remain confidential.  The Tenth Circuit has held that an individual's expectation of privacy for constitutional purposes is legitimate only if the information is "highly personal or intimate." *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995). Applying this test, the court has found a legitimate expectation of privacy only in highly confidential matters such as medical information and intimate marital affairs.  *Compare Nilson*, 45 F.3d at 372 (no legitimate expectation of privacy in expunged criminal record), *Flanagan*, 890 F.2d at 1570-1 (no legitimate expectation of privacy in police internal investigation files), *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1155 (10th Cir. 2001) (no legitimate expectation of privacy in reasons for resignation or employee evaluations or allegations of rape and assault), *with Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000) (legitimate expectation of privacy in nondisclosure of HIV status), *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir. 1995) (legitimate expectation of privacy in wife's diary as it pertained to intimate marital matters), *A.L.A. v. West Valley City*, 26 F.3d 989, 990-91 (10th Cir. 1994) (legitimate expectation of privacy in confidential medical records).

In applying the foregoing authorities to the facts of this case, the Court concludes that Graham did not have a legitimate privacy interest in the information relating to the reasons for his removal from the position of Acting Chief of Police.[6]  Routine information about one's employment, including information about poor performance, misconduct, or violation of work rules, is neither

---

[6] As explained elsewhere in this Memorandum Opinion and Order, Graham's Complaint contains no allegation that Defendants disclosed the reasons for his three-week suspension, and therefore it does not appear that he is making a claim for violation of his privacy in regard to that event.  However, to the extent that Graham may be making such a claim, the Court concludes that information is not constitutionally protected for the same reasons that he has no right to privacy for the reasons behind his removal from the job of Acting Chief of Police.

highly personal nor intimate under Tenth Circuit law. Such information is much more like the expunged criminal records in *Nilson* or the police internal affairs files in *Flanagan* than it is the highly personal medical information in *Herring* or *A.L.A.* Accordingly, Graham's claim for violation of his right to privacy will be dismissed.

### 3.    Deprivation of a Liberty Interest

A public employee such as Graham has a liberty interest in his good name and reputation as it affects his protected property interest in continued employment. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160 (1976). "In order to recover under § 1983 for infringement upon a liberty interest, [a] plaintiff must first show that the complained of conduct stigmatized or otherwise damaged [his or] her reputation." *McGhee v. Draper*, 639 F.2d 639, 642-43 (10th Cir. 1981) (citing *Paul v. Davis*, 424 U.S. 693, 697-713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). The alleged damage to the plaintiff's reputation must be entangled with some other "tangible interests such as employment." *Paul*, 424 U.S. at 701, 96 S.Ct. 1155.

To establish that Defendants infringed upon his liberty interest, Graham also must satisfy a four-part test: "First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published." *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994) (internal citations omitted). Once a plaintiff meets these requirements, thereby establishing the infringement of a liberty interest, the due process protections of the Fourteenth Amendment are triggered and the plaintiff must show that he or she was not afforded an adequate name-clearing hearing. *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507 (1971); *Jensen v.*

*Redevelopment Agency*, 998 F.2d 1550, 1558 (10th Cir. 1993).

> **a.      Events surrounding Graham's removal from position of Acting Police Chief**

In applying these standards to the allegations that Defendants improperly removed Graham from the position of Acting Police Chief, the Court finds that Graham has alleged that Defendants made and published false statements about him, thereby satisfying the first and fourth requirements listed above.  However, Graham has failed to allege sufficient facts to support the second and third prongs of this test.  With regard to the second prong, the Complaint fails to set forth any of the alleged defamatory statements made by Defendants.  Instead, the Complaint contains only the conclusory allegation that Defendants made "willful, wrongful and malicious communications" that damaged his reputation.  Complaint at ¶ 36.  "In order to state a constitutional claim, the charges must implicate dishonesty or immorality in order to deprive an employee of a liberty interest in his good name and reputation." *Hicks v. City of Watonga, Oklahoma*, 942 F.2d 737, 746 (10th Cir. 1991) (internal quotations omitted).  However, there is nothing in the complaint or the documents referenced therein to suggest that the statements allegedly published by Defendants accused Graham of dishonesty or immorality.   In his response brief, Graham does not point to any statement by Defendants accusing him of dishonesty or immorality.  Instead he merely argues that his "good name, reputation, honor and integrity were damaged as a direct result of Defendants' unlawful act of demoting him from Acting Chief to Major.  Not only does word travel fact in a small towns [sic] such as Hobbs, New Mexico, but in this instance word traveled instantly through articles written in the Hobbs News Sun [sic] and the Lubbock Avalanche Journal."  This is insufficient because deprivation of a liberty interest requires false statements that impugn one's reputation.  The mere act of removing

an employee from his position is not enough.

With regard to the third prong, Graham has failed to allege any facts to support an allegation that Defendants' statements occurred in the course of the termination of his employment (in fact, it is clear from the Complaint that he remains employed with the Hobbs Police Department) or that the statements foreclosed other employment opportunities for Graham.  Potential damage to prospective employment opportunities is too intangible to constitute a deprivation of a liberty interest.  *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989).

### b.      Events surrounding Graham's three-week suspension

With regard to Graham's three-week paid suspension for supposed dishonesty in a police report, the Complaint again fails to state a claim for deprivation of a liberty interest. Graham has satisfied the first two prongs of the test, alleging that Defendants have falsely accused him of lying on a police report.  *See Palmer v. City of Monticello*, 31 F.3d 1499, 1503 (10th Cir. 1994) ("[A]n accusation that a police officer falsified a speeding ticket qualifies as a stigmatizing charge which amply supports that element of a liberty interest violation.").  However, the statements did not occur in the course of terminating Graham's employment, nor is there any suggestion that the accusations have foreclosed other employment opportunities.  In fact, Graham alleged that after he was accused of untruthfulness, his name was cleared.  Complaint at ¶ 34.  Furthermore, there are no factual allegations in the Complaint that Defendants actually *published* any statements about Graham in connection with his suspension as required by the fourth prong of the test enumerated above. Accordingly, Graham has failed to state a claim for deprivation of his liberty interest.

### C.      <u>Freedom of Speech</u>

"It is clearly established that a State may not discharge an employee on a basis that infringes

that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891 (1987).   This Court must evaluate Graham's First Amendment retaliation claim under the four-step test derived from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731 (1968), and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684 (1983).  *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).  First, the Court "must determine whether the employee's speech can be 'fairly characterized as constituting speech on a matter of public concern.'" *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996) (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684).  If it can, the Court must then "balance the employee's interest, as a citizen, in commenting upon matters of public concern against 'the interest of the State, as an employer, in promoting the efficiency of the public service[s] it performs through its employees.'"  *Id*. (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).  These first two questions are legal in nature and must be resolved by the court.  *Id*.

If the balance tips in favor of the employee, the employee next must "prove that the protected speech was a substantial factor or a motivating factor in the detrimental employment decision." *Id*. If the employee makes this showing, then the burden shifts to the employer to show that it would have made the same employment decision in the absence of the protected speech. *Id*. These final questions concern causation and are properly resolved by the factfinder. *Id*.

### 1.    Matter of Public Concern

"Matters of public concern are those of interest to the community, whether for social, political or other reasons."  *Dill*, 155 F.3d at 1201. For instance, "[w]hile speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern ..., 'speech that seeks to expose improper operations of the government or questions the integrity of

governmental officials clearly concerns vital public interests.'" *Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001) (quoting *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988) (emphasis added) (further citations omitted)).  The essential question, therefore, is "'whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 247 (4th Cir. 1999) (quoting *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir. 1985) (internal quotation marks omitted)).  In performing this inquiry, the Court must consider "the content, form and context of a given statement." *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684 (1983). This  includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance. *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989).  An employee's speech must not merely relate generally to a subject matter that is of public interest, but must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Wilson v. City of Littleton, Colo*., 732 F.2d 765, 768 (10th Cir. 1984).

In neither his Complaint nor his response to the motion to dismiss does Graham point to any specific statements made by him at the January 9, 2004 meeting which he believes touch upon matters of public concern.  Instead, he argues that the topics of his statements were "officers' pay and benefits, discussions Graham had with Commissioner Newman regarding officer pay and benefits, Commissioner Hector Ramirez' relationship with the Hobbs Police Department and a brief discussion regarding whether Graham was still in the running for the position of Chief [of Police]."  Response Brief at 11.  Graham then cites generally to his Exhibit 2, the 28-page transcript of the January 9, 2004 meeting.  Graham gives no citation to any specific passage, apparently leaving to the Court the

job of ferreting out which specific statements he contends touched on matters of public concern. Similarly, Defendants' briefing, while setting forth the legal standard for what constitutes a matter of public concern, is devoid of any discussion applying that law to the statements made by Graham at the January 9, 2004 meeting. In this regard, both Graham and Defendants have failed to properly address the issue. However, in the copy of the transcript provided by Graham, he has underlined certain passages on pages 9, 10 and 27. The Court will presume that these are the passages that Graham contends contain statements of public concern.

After reviewing those passages, the Court concludes that Graham's speech is not protected by the First Amendment. On page 9 of the transcript, Graham states, "One thing that we can't ... that we don't have ... really anything to do with is, us... that's another, you know, morale buster, is the money...and the benefits. But, uh, right now, there's absolutely nothing.. .nothing I... I can do about it, nothing you guys can do about it..."  Graham then goes on to criticize Commissioner Hector Ramirez, a defendant in this case: "there's really only one person on the Commission, right now, um, that I think is...is, uh, making this police department very political and he's going to use it in his campaign. Um... and that's Hector Ramirez. Uh, and if it gets back to him, I don't care. He's a ... grown man, he can come talk to me ..."

On page 10 of the transcript, Graham describes a conversation he had with Commissioner Newman in which he informed Newman of things that he didn't know about, such as that "everybody is just perfectly happy with the salary" but that the Hobbs Police Department benefits package is less generous than that in other places. Graham then turned back to the election for the Hobbs Commission:

> I think, uh...Albert Gonzales...uh, which is Johnny Gonzales' brother,

actually, ... is running for Commissioner in Hector's district and I can tell you he'll be very pro-police and we'll have another Commissioner on there that's got some common sense and most importantly will do things for the right reason.  And I...think that's all we want out of a Commissioner...somebody that will use a little common sense and do things for the right reason and not make comments just...just out of the blue, uh, like Hector's done.  There's absolutely no reason he should make this police department political.... But a large part of it is because, uh, you guys don't get the necessary benefits and pay that you deserve.... I don't know, maybe somebody else has seen him, but not one time have I seen, uh, Hector Ramirez or several others over at this police department to see what you guys do every day.

Finally, on page 27 of the transcript, Graham turns to the subject of who will be hired as the next Chief of Police:

I have just as good a chance as anybody else, but, uh, politics will play a big part in it, and I'll be quite honest with ... with what you guys say, uh, to the Commissioners, uh, and Mr. Dible, if he ends up talking to everybody, uh...will play a part into it also.... However, I do have a problem with somebody... you know, this is not L.A. or New York, um...you know, somebody coming in from the outside from back East or from the, you know, somewhere in the Midwest, come to Hobbs, New Mexico, that's going to make a commitment to this place, which is what we need, uh... I don't think it's going to happen.  And I don't want a police chief coming in that's gonna ... that's retired and is going to come in and earn a paycheck when, one, I gotta do the work and he gets paid for it, and two, if he's not going to have the , uh, commitment that it takes to, to turn this place around... that's my biggest concern.

The Court concludes that this speech is not a matter of public concern.  Graham's comments do not point out improper operations of the government or questions the integrity of governmental officials.  Though Graham expresses his disagreement with Defendant Ramirez, he does not point out any misconduct or malfeasance by Ramirez with which the public should be concerned.  Furthermore, his comments are too general to sufficiently inform the public on any issue.  The same can be said of Graham's elliptical comments on the issue of police salary and benefits.

Similarly, Graham's statements regarding the office of Hobbs Police Chief are ambiguous and fail to point out specific problems with management of the police department by public officials, ineptitude of public officials, waste, or corruption, or anything of that nature.  Furthermore, Graham's speech on this issue must be taken in context. *Connick v. Myers*, 461 U.S. at 147-48.  As a potential candidate for the job of Police Chief, Graham had a personal interest in airing his view that a local candidate, rather than someone from out of state, should be hired for the position.  He also stood to benefit from encouraging the employees present at the meeting to discuss their preferences with the City Manager.  The  speaker's purpose is a factor the Court must consider in determining whether he was discussing a matter of public concern or merely airing a personal grievance.  *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989).

After considering Graham's comments and their context, the Court concludes that his speech was not protected by the First Amendment.  In making this conclusion, the Court is assisted by the distinctions drawn by the Tenth Circuit in this arena. *Cf. Schrier v. University of Colorado*, 427 F.3d 1253 (10th Cir. 2005) (finding that doctor's speech concerning the expenditure of public funds and the potential impact the relocation of a university hospital would have on patient care, education, and research were matters of public concern); *McFall v. Bednar*, 407 F.3d 1081 (10th Cir. 2005) (speech by attorney for Oklahoma Indigent Defense System objecting to procedure for approval of expert witnesses touched on matter of public concern because speech dealt with proper investigation of criminal cases and provision of effective assistance of counsel to indigent defendants); *Baca v. Sklar*, 398 F.3d 1210 (10th Cir. 2005) (remarks alleged illegal financial dealings between a state university and a state agency were matter of public concern, where the form and context of speech revealed that plaintiff did not seek personal advantage by raising allegations of wrongdoing); *Hardeman v. City of*

*Albuquerque*, 377 F.3d 1106 (10th Cir. 2004) (while some of plaintiff's speech related to her personal dispute with a co-worker, much of her speech did claim to be evidence of corruption, impropriety, or racial discrimination on the part of city officials and was therefore a matter of public concern); *Gardetto v. Mason*, 100 F.3d at 812-15 (holding that speech motivated primarily by the speaker's personal interest "in maintaining her staff," or involving matters related to "internal budgetary decision[s]" did not qualify for first amendment protection, but that speech involving the "electoral process," the "integrity, qualifications, and misrepresentations of a highly visible public official," the general "expenditures of public funds," or the "overall management of the public institution" was protected); *Witham v. Baptist Health Care of Okla.*, 98 F.3d 581, 583 (10th Cir. 1996) (holding that speech that "offered nothing at all to inform the public about the management of the [public] hospital" and that did not expose "government ineptitude, waste or corruption" did not qualify for First Amendment protection). Accordingly, Graham's claim that he was retaliated against for exercising his right to free speech will be dismissed.

### D.   All Constitutional Claims Against the City of Hobbs and Against the Individual Defendants in Their Official Capacities

In order to state a claim against a municipal or local entity, a complaint must allege that a constitutional deprivation was caused by an official policy or custom. *See Norton v. City of Marietta, Oklahoma*, 432 F.3d 1145, (10th Cir. 2005).  A government entity is liable under Section 1983 only when an official policy or custom inflicts the injury of which the plaintiff complains.  *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Graham's complaint fails to allege that any official policy caused his injuries; he says only that various individual actors deprived him of his rights. Therefore, under *Monell*, his claims against the City and

the individual Defendants acting in their official capacities must fail.

## IV.    MOTION TO DISMISS BASED UPON QUALIFIED IMMUNITY

Having dismissed Graham's claims for failure to state a claim upon which relief may be granted, the Court need not reach the question of whether Defendants are entitled to qualified immunity.

## V.    MOTION TO AMEND COMPLAINT

Graham moves to amend his complaint to add Joan McMahon ("McMahon"), Hobbs City Attorney, as a defendant in this case. His proposed amended complaint adds new allegations in which he contends that McMahon initiated a private conversation with Graham outside the presence of his attorney in which she encouraged him to consider settling portions of his case. *See* Proposed Amended Complaint (attached to Graham's motion to amend) at ¶ 29. In his brief in support of the motion, Graham contends that his causes of action against McMahon are conspiracy and retaliation.

In light of the analysis set forth in Part III of this Memorandum Opinion and Order, the Court finds that Graham's proposed amendment would be futile and that his claims against McMahon for conspiracy and retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 would necessarily fail for the reasons discussed above. Accordingly, the motion to amend will be denied. However, that denial is without prejudice to any separate disciplinary claims or other recourse that Graham may have against McMahon for her alleged communications with him about this case outside the presence of his attorney. Any such claims are entirely separate from Graham's constitutional claims in the original complaint and arise from separate, subsequent events.

**IT IS THEREFORE ORDERED** that:

(1)    *Plaintiff's Motion to Extend Page Limits on Response and Attachments to Defendants'*

*Motion to Dismiss* [Doc. No. 23] is **GRANTED** to the extent that Graham requests leave to file a response brief that exceeds the 24 pages allowed under the Local Rules, but **DENIED** to the extent Graham seeks an extension on the number of pages of exhibits he may file in support of his response;

(2)     *Plaintiff's Motion for Leave to File Supplemental Documents in Support of Plaintiff's Response to Defendants' Motion to Dismiss* [Doc. No. 37] is **DENIED**;

(3)     *Defendants' Motion to Dismiss* [Doc. No. 17] is **GRANTED**, and all of his claims against Defendants will be **DISMISSED**; and

(4)     *Plaintiff's Motion to File Amended Complaint and Join Joan McMahon As a Defendant* [Doc. No. 38] is **DENIED**.




_____
**UNITED STATES DISTRICT JUDGE**

27